IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JERRY SIMS,

    Plaintiff,

vs.                                                  CASE NO. CV-09-J-1545-NE

JAMES LEONARD, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Pending before the court are defendants' motion for summary judgment (docs. 39 and 40), defendants' brief and evidence in support of such motion (docs. 41 and 42). The plaintiff has failed to respond.[1] Having considered all of the pleadings filed to date, the current submissions, and the relevant law, the court finds as follows:

Plaintiff brought this action against the City of Huntsville, Alabama ("COH"), and an individual police officer employed by COH due to circumstances surrounding the arrest of the plaintiff on August 10, 2007. Plaintiff states claims for illegal arrest

---

[1] By Order dated April 1, 2010, the court entered Exhibit A – Summary Judgment Scheduling Order. That Order sets forth deadlines for responding to motions for summary judgment, including the requirement that a party opposing a motion for summary judgment must respond to said motion within 21 days of the same being filed. That time expired on February 16, 2011.

and excessive force, pursuant to 42 U.S.C. § 1983, for violations of his Fourth Amendment rights and a claim for assault and battery under state law.[2]

## FACTUAL BACKGROUND

The following facts preceding the plaintiff's arrest are not in dispute.[3] In 2002, the plaintiff suffered an injury which resulted in the amputation of his left leg below the knee. Plaintiff depo. at 14, 16, 89, 102. On August 10, 2007, the plaintiff went to the Double D Lounge, in Huntsville, Alabama, to play pool. *Id*. at 118, 131, 139. A woman named "Red" was bartending. *Id*. at 129, 137. He bought a beer and played pool for at least an hour and a half and drank some Diet Cokes. *Id*. at 155-156. After he had been there more than two hours, someone bought him a second beer. *Id*.

While he was there, the plaintiff had to go outside about every thirty (30) minutes because his leg would sweat from the rubber support system so he would go to his car to cool it down. Plaintiff depo. at 156-157, 163. The plaintiff left his beer

---

[2] Plaintiff's counsel withdrew from representation in September 2010 (docs. 24 and 25). The plaintiff filed a motion for continuance to allow time to obtain new counsel on October 8, 2010, and the court extended all deadlines thirty days (docs. 27 and 28). Based on motion of the defendants, the court extended all deadlines an additional forty-five (45) days (docs. 29 and 30). The plaintiff then filed another motion to continue, stating he was still seeking new counsel (docs. 31 and 32). In December 2010, the court granted yet another motion to continue (docs. 33 and 34). Yet another motion from the defendant (doc. 35 and another motion from the plaintiff (doc. 37) were again granted (docs. 36 and 38).

[3] Because the plaintiff failed to respond to the defendants' motions, the court has pulled these facts from the plaintiff's deposition, submitted by defendants.

on the bar while he did this. *Id*. at 158. At some point after 7:30 p.m., the plaintiff became woozy and believes someone "slipped me a mickey."[4] *Id*. at 158, 167, 169. The plaintiff laid down his head and told a friend to see if Red minded if the plaintiff came behind the bar to make coffee.[5] *Id*. at 158-159. The friend said it was okay but never checked with the bartender. *Id*. The plaintiff started to go behind the bar, but the bartender said he could not go back there. *Id*. at 159, 182. Plaintiff walked back out from behind the bar and asked the bartender to make him coffee, but she never did. *Id*. Then the police were called. *Id*. at 159; 191-192.

The remainder of the facts, including all of those surrounding plaintiff's arrest, are disputed. According to the plaintiff, after he was told not to go behind the bar, and sat down at a bar stool, he saw Red with the phone in her hand and she said she was calling the police. Plaintiff depo. at 192. The 911 call reflects someone who identifies herself as "Red" informing the dispatcher that the Double D is having trouble with a customer and the customer is threatening to kill everyone there. Defendant exhibit D. A second call was then made, in which the caller asks the

---

[4]The plaintiff clarifies that he does not actually know what a mickey is, but has heard this term on TV so that is what he is calling it. Plaintiff depo. at 173. On a prior visit to this bar, an older gentleman told him that he had gotten a mickey at this bar and the plaintiff should be careful. *Id.* at 230.

[5]He has never felt like that before and has never gotten drunk at that bar before. Plaintiff depo. at 172. He may have been buzzed but was not drunk during the time in question. *Id*. He estimated he drank four beers in all. *Id*. at 167.

dispatcher to tell the officers to "please hurry." *Id. See also* defendant exhibits F, G. Plaintiff denies threatening anyone, explaining that he was in no shape to do so. Plaintiff depo. at 200-201. He also states he did not raise his voice but admits that "I could be wrong. You know, when you's buzzed, you could be wrong." *Id.*

While he was sitting with his head down, an officer came in and said it was a raid and most of the patrons went out the front door. Plaintiff depo. at 170, 176, 192-193. This officer was wearing "dress greens" and had a badge, but the plaintiff did not know what police department he was with and has never seen law enforcement officers dressed like that before. *Id*. at 205-206. The officer "casually watched everybody leave the premises, and then he just turned around and walked away...." and went out the way he came in, through the back door. *Id*. at 203-204, 211-212. The plaintiff then explains that he saw what he thought was a badge so he figured it was a police officer. *Id*. at 207. The plaintiff admits this would be an unusual way to handle a raid but this is how he remembers it. *Id*. at 212.

After sitting for about five minutes, the plaintiff felt better and got up but a woman in a blue dress grabbed his right leg and said "Jerry, they're setting you up; there's officers waiting outside, don't go." Plaintiff depo. at 190, 208. She was actually wrapped around his good leg, sitting on his foot. *Id*. at 208-211. He tells her he was okay, apologizes to the bartender, and goes to the door leading to the back

room. *Id.* There were two officers standing there. *Id.* The plaintiff does not think he was hallucinating. *Id.* at 212-213. He believed it may have been non-party Officer Sallis that announced the raid, but only because when he got to the back room, he met the two officers. *Id.* at 216.

The plaintiff told the two officers in the back room he had a prosthetic leg, and that if they were going to arrest him for something, to put handcuffs on him before they took him out the back door. Plaintiff depo. at 217. When he mentioned his prosthetic leg, the officer "sort of let him go." *Id.* Then Officer Leonard, who was behind plaintiff, started kicking the heel of his prosthetic leg, and the leg moved to a 22 degree angle. *Id.* at 217-221. He slammed the plaintiff against the wall and pulled him out the back room door, but the plaintiff's prosthetic foot was at an off angle and caught on the door frame. *Id.* at 218-219. The plaintiff thinks he blacked out for awhile because when he woke up both handcuffs were on and his toe was stuck in the door jamb. *Id.* at 222-223. The plaintiff does not know who hit him or with what he was hit. *Id.* at 235-236. When he leaned down to try to raise his leg, he got hit again and blacked out again. *Id.* at 223.

The next thing the plaintiff remembers he was about ten feet away, in the parking lot, trying to straighten his leg. Plaintiff depo. at 236; 243. He was trying to tell the officers he had a prosthetic leg and needed to straighten it. *Id.* at 223. As

soon as he had it locked in place his "leg got knocked out of me, and it sounded like a tree sapling breaking....and then I knew my leg was broken." *Id*. at 223; 234. The officers told plaintiff to get up and when he did not comply, he was kicked in the ribs. *Id*. He told the officers he could not get up because they had broken his leg. *Id*. at 253. The officers conferred about plaintiff's claim they broke his leg and decided there was nothing wrong with the plaintiff. *Id*. at 224; 244.

     The plaintiff suffered a broken femur. Plaintiff depo. at 249. The plaintiff blames this on defendant Leonard, but does not know which officer hit him causing his fall, or whether it was a kick or tackle or hit from the officer. *Id*. at 225, 250. The plaintiff assumes he was kicked, but states it happened so fast all he saw was a blur. *Id*. at 225, 250. The officers had to carry him to the police car. *Id*. at 256.

     The plaintiff testified that when he got to the police station, he was given a breathalyzer test and registered a .07. Plaintiff depo. at 255. He asked if he was free to go because he needed to get to the emergency room for his leg. *Id*. at 255-256. Officer Leonard stated that there was nothing wrong with the plaintiff except that he did not know how to walk on his prosthetic leg. *Id*. Instead of releasing him, the plaintiff was made to "hop walk" to a cell on one leg and kept overnight. *Id*. at 257. In spite of his repeated requests for medical attention, the plaintiff was made to wait until the day shift came on, at which point an officer brought a wheelchair and

wheeled the plaintiff to be fingerprinted and processed. *Id*. at 258. The plaintiff then bonded out and was taken to the hospital by his mother. *Id*. at 258-259.

The plaintiff was later convicted in city court without the results of the breathalyzer test. Plaintiff depo. at 261. *See also* defendant exhibits K, L, and M, D000062.

According to the defendants, Officers Sallis and Leonard were sent to the Double D Lounge based on the phone call that an intoxicated male was harassing and threatening people inside the club. *See* defendant exhibit M, D000029. When Officer Sallis arrived at the bar, he was told by the bartender and bouncer that a patron had tried to attack them, then gone out to the back parking lot and passed out. Sallis depo. at 5-6. According to Officer Leonard, upon arriving at the bar, he talked to the manager and bouncer and was told that the plaintiff was passed out in the back parking lot. Leonard depo. 6-7. When he walked out to the parking lot, Officer Sallis, the manager/bartender, and the bouncer may have all been there, as well as a few customers. Leonard depo. at 7; Sallis depo. at 6-8. The plaintiff was face down on the pavement. Leonard depo. at 8; Sallis depo. at 6. Leonard used his foot to tap the plaintiff and tell him to get up. Defendant exhibit M, D000030. He tapped the plaintiff on his upper left leg. *Id*., D000038. The plaintiff raised his head and said something unintelligible. *Id*., D000030, D000033, D000040.

7

When they tried to take the plaintiff into custody, he resisted. Sallis depo. at 7. *See also* defendant exhibit H. The plaintiff was arrested for public intoxication and resisting arrest. Leonard depo. at 7-8. After he was handcuffed, the plaintiff stated his leg had come off and then started saying that Leonard broke his leg. *Id.* at 14. Although the plaintiff did not complain of any other injuries, Leonard noted on his report that the plaintiff had abrasions on his face, chest and stomach. *Id.* at 14-15.

Leonard transported him to the jail and called for a wheelchair before taking the plaintiff out of his car, but they could not find one. Leonard depo. at 9-10. Defendant exhibit M, D000032, D000048. The plaintiff stood on his good leg and screamed profanities such as that he would "kick my ass" and "have my badge...." Leonard depo. at 10. The plaintiff was able to walk into the jail on his good leg on his own. *Id.* at 12. Although he heard the plaintiff yelling that they broke his leg, Leonard and Sallis believed the plaintiff meant his prosthetic was unattached when they made contact with him. Leonard depo. at 13; Sallis depo. at 9. Leonard also stated that the plaintiff was not given a breathalyzer or intoxilyzer test because they "normally don't do that on a public intoxication case." Leonard depo. at 13-14.

Medical records showing an admission date of August 11, 2007, reflect that the plaintiff did suffer a broken femur. Defendant exhibit S.

## II. STANDARDS OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts

showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

Although the plaintiff has failed to file a response to the defendants' motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56(e). The court must still find that summary judgment is appropriate from the pleadings and the evidence. However, "the language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. With these standards in mind, the court considers each of the plaintiff's claims.

Because this case is before the court on the defendant's motion for summary judgment, the court must view the facts in the light most favorable to the plaintiff. *See Dyer v. Lee,* 488 F.3d 876, 877 (11th Cir.2007); citing *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1075 n. 1 (11th Cir.2007). The court may not make credibility

determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). However, defendants' motion for summary judgment having been properly supported, the plaintiff may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing there is a genuine issue for trial. *Beard v. Annis*, 730 F.2d 741, 743 (11th Cir.1984).

### III.  LEGAL ANALYSIS

**A.  § 1983 Claims against Defendant Leonard**

These claims address events from the time when the arresting officers arrived at the Double D lounge until the plaintiff was deposited at the jail. 42 U.S.C. § 1983 prohibits a person, acting under color of state law, from depriving another person of his or her rights secured by the United States Constitution. *See* 42 U.S.C. § 1983. Section 1983 creates no substantive rights on its own, but merely provides a remedy for deprivation of federal constitutional rights. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996). To prevail on a suit under § 1983, the plaintiff must show both a deprivation of federal rights and that said deprivation was by a person acting under color of state law. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992).

The plaintiff asserts that defendant Leonard violated his Fourth Amendment rights by unlawfully arresting him and by using excessive force in effectuating his arrest.[6] Defendant Leonard claims qualified immunity. Qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir.2001)(additional quotations omitted). To receive qualified immunity, the officer in question must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred. *Lee*, 284 F.3d at 1194.

Defendant Leonard asserts, and the plaintiff fails to dispute, that he was acting within his discretionary authority at all times relevant to the allegations of the complaint. Therefore, the plaintiff bears the burden to show that qualified immunity is not appropriate. To do so, the plaintiff must show both that a violation of a constitutional right occurred, and that the right in question was clearly established. *See e.g., Draper v. Reynolds*, 369 F.3d 1270, 1274-75 (11th Cir.2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir.2003). In *Rodgers v. Horsley*, the Eleventh

---

[6]There is no *respondeat superior* liability for § 1983 claims. *See e.g., Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978). Thus, these claims were brought solely against defendant Leonard.

Circuit further explained that "[f]or a 'right' to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right.'" *Rodgers*, 39 F.3d 308, 310 (11th Cir.1994) (emphasis in *Rodgers*) citing *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Because the plaintiff has failed to respond to the defendant's motion for summary judgment, he necessarily has failed in his burden to show that qualified immunity is not appropriate. *See e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir.2010) (unless "the plaintiff satisfies both parts of the test," the defendant officers are entitled to qualified immunity), *petition for cert. dismissed sub nom. Timoney v. Keating*, 131 S.Ct. 501 (Oct. 15, 2010). Therefore, the court shall grant defendant Leonard's motion for summary judgment on plaintiff's § 1983 claims by separate Order.

### B. Assault and Battery Claim against Leonard and City of Huntsville

In considerating the plaintiff's state law claim, the court is cognizant that § 6-5-338 of the Alabama Code contains a provision immunizing law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties. Ala.Code § 6-5-338(a) (1994) ("Every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any

discretionary function within the line and scope of his or her law enforcement duties."). To determine whether this immunity is applicable, the court must apply the state-agent immunity test set out by the Alabama Supreme Court in *Ex parte Cranman*, 792 So.2d 392 (Ala.2000). *Ex parte City of Tuskegee*, 932 So.2d 895, 904 (Ala.2005) ("The restatement of State-agent immunity as set out in *Cranman*, 792 So.2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a).").

Therefore, the court must apply *Cranman's* state-agent immunity test to determine if defendant Leonard receives immunity for plaintiff's state-law claim. The Alabama Supreme Court established a burden-shifting framework for application of the state-agent immunity test. A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle the agent to immunity. *Ex parte Estate of Reynolds*, 946 So.2d 450, 452 (Ala.2006). "If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Brown v. City of Huntsville, Ala.,* 608 F.3d 724, 741 (11th Cir.2010).

Clearly, defendant Leonard was acting within the scope of his discretionary function as a law enforcement officer. Accordingly, the burden shifts to the plaintiff to show Leonard acted willfully, maliciously, fraudulently, or in bad faith. Because

14

the plaintiff failed to respond to the defendants' motions for summary judgment, this claim necessarily fails.[7]  The court will therefore enter summary judgment in favor of defendant Leonard on this claim.

Additionally, "under principles of vicarious liability, where a municipal employee enjoys immunity, the municipality likewise is immune as to claims based on the employee's conduct." *City of Bayou La Batre v. Robinson*, 785 So.2d 1128, 1131 (Ala.2000). In cases such as this where the "municipal employee" is a law enforcement officer, Alabama's statutory, discretionary-function immunity explicitly extends an officer's immunity to the employing municipality. Ala.Code § 6-5-338(b) ("This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers."). Because the court finds that defendant Leonard is entitled to statutory, discretionary-function immunity on the plaintiff's assault and battery claim, §6-5-338(b) extends that

---

[7]In conjunction with the plaintiff's assault and battery claim, the court has considered that the plaintiff testified that the officers were behind him, that he does not know who hit him or what he was hit with, plaintiff depo. at 225, 235-236, but he blames Officer Leonard rather than Officer Sallis, plaintiff depo. at 225.  The second time he was hit "I didn't know who did it because all of my attention was on my foot..." Plaintiff depo. at 242.  He also testified that he does not know who knocked him to the ground.  Plaintiff depo. at 249.  Under this set of facts, the plaintiff's claim for assault and battery necessarily fails even without application of the immunity test, as to prove battery, the plaintiff must demonstrate  (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. *Ex parte Atmore Community Hosp.,* 719 So.2d 1190, 1193 (Ala.1998).  Having testified that he does not know who hit him, the plaintiff cannot establish that defendant Leonard hit him.

immunity to COH as well. *See e.g., Brown*, 608 F.3d at 742. As such, the court shall grant defendant COH's motion for summary judgment on this count of the plaintiff's complaint as well.

## CONCLUSION

Having considered the foregoing, and being of the opinion that the defendants are entitled to summary judgment in their favor on all counts of the complaint, for the reasons set forth herein, the court shall grant the defendants' motions for summary judgment by separate order.

**DONE** and **ORDERED** this the 17th day of February, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE